**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | |
|---|---|
| HERMAN R SAMAYOA; and PAM PULLEN, | |
| Plaintiffs, | CIVIL ACTION NO.: 4:25-cv-251 |
| v. | |
| STATE FARM FIRE AND CASUALTY COMPANY, | |
| Defendant. | |

**O R D E R**

This matter is before the Court on Defendant's Motion to Dismiss, (doc. 7), and Motion for Hearing on Motion to Dismiss, (doc. 8).  For the reasons set forth below, the Cour **REMANDS** this case to the Superior Court of Chatham County, Georgia, due to this Court's lack of subject matter jurisdiction, and thus **DIRECTS** the Clerk of Court to **TERMINATE** the pending Motions **as moot**.

On or about September 11, 2025, Plaintiffs filed their initial complaint initiating this action against State Farm Fire and Casualty Company ("Defendant") in the Superior Court of Chatham County, Georgia.  (Doc. 1-3.)  In the initial complaint, Plaintiffs alleged that their real property, which was covered under an insurance policy issued by Defendant, suffered physical damage as a result of a hurricane.  (See generally id.)  They claimed that, despite the loss being covered by the insurance policy, Defendant refused to pay the full amount of their claimed losses.  (Id.)  Plaintiffs did not allege a specific dollar value for their losses, other than saying it was less than $75,000.

(See id. at p. 5 ("The Insureds has [sic] suffered physical damage to the Property in an amount to be determined at trial, but not to exceed $74,999.").)  Through Count I of the Complaint, Plaintiffs asserted a claim for breach of contract based on Defendant's failure to indemnify them for the covered loss.  (Id. at pp. 5–7.)  In Count II, they asserted a claim that Defendant's allegedly bad faith refusal to pay their claim was a violation of O.C.G.A. §§ 33-4-6 and 33-6-34.  (Id. at 7–11.)  Plaintiffs claimed that, in addition to the amount of loss, the bad faith statutes entitle them to recover their reasonable attorneys' fees and a penalty of $5,000 or not more than fifty percent of the loss, whichever is greater.  (Id. at pp. 10–11.)

Defendant removed the case to this Court on October 17, 2025, purportedly based on diversity jurisdiction. (Doc. 1.)  As to citizenship, Defendant explained that Plaintiffs are Georgia citizens, while Defendant is incorporated in Illinois and has its principal place of business there. (Id. at pp. 2–3.)  As for the amount in controversy, Defendant stated that Plaintiffs had previously submitted a purported demand (a copy of which Plaintiff had attached to it initial complaint), alleging $50,241.45 in property damage.  (Id. at p. 3; see also doc. 1-4.)  The demand letter does not detail the losses incurred but states that the estimate of damages was $50,241.45.  (Doc. 1-4.)  In its Notice of Removal, Defendant reasoned, "if [P]laintiffs prevail in Count II, O.C.G.A. § 33-4-6 would allow the jury to impose a penalty not to exceed 50% of the damages owed under the applicable homeowners policy plus attorney's fees.   50% of the amount of demanded compensatory damages is $25,120.73.  When totaling the demanded compensatory damages [$50,241.45] plus alleged bad faith penalty [$25,120.73] plus alleged attorney's fees, the amount in controversy exceeds $75,000.00."  (Doc. 1, p. 3 (alterations and additions in original).)

2

Defendant made clear, however, that it "denies that it has any liability to plaintiffs under [O.C.G.A. § 33-4-6]." (Id.)

Within days of removing the case, Defendant filed a Motion to Dismiss. (Doc. 7.) In the Motion, Defendant argues that the entire complaint should be dismissed for failure to plead sufficient facts to support its primary claim for breach of contract. (Id.) It also argues that the claim, in Count II, for bad faith fails as a matter of law because: (1) Plaintiffs' pre-suit demand for payment under the policy was procedurally improper as it was not made at a time when immediate payment was due; and (2) Plaintiffs cannot rely on O.C.G.A. § 33-6-34 to support their claim of bad faith because that statute does not provide for private causes of action for violations of the statute.[1] (Id. at pp. 11–16.)

Plaintiffs did not respond to the Motion to Dismiss, but instead filed an Amended Complaint that, *inter alia*, removed Count II (for bad faith) entirely. (Doc. 12.) The only claim asserted in the Amended Complaint is Count I, for breach of contract, and Plaintiffs now explicitly allege that they suffered physical damage to the property "in an amount to be determined at trial, but not to exceed $50,241.45 representing the portion of the Loss that remains unpaid after application of the Insurance Company's prior payment and any applicable policy limits." (Id. at p. 14.)

The removal of the bad faith claim, particularly in light of Defendant's argument, throughout the case, that Plaintiffs were never legally entitled to recover on such a claim—presents a concern for the Court, as the potential recovery for the bad faith claim was necessary in order for the amount in controversy in the case to meet the jurisdictional minimum. When, for any reason,

---

[1] Defendant also requested dismissal of Plaintiffs' request for prejudgment interest. (Doc. 7-1, p. 16.)

subject matter jurisdiction appears to be lacking in a case, "a federal court must inquire *sua sponte* into the issue[.]" Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1261 (11th Cir. 2000) (citation omitted); Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999) ("[I]t is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." (citations omitted)).

As there appears to be no basis for federal question jurisdiction, and Defendant explicitly removed the case on diversity jurisdiction grounds, in order for this Court to have jurisdiction over the case, the total amount in controversy must be over $75,000, exclusive of interest and costs. 28 U.S.C. § 1441. The removing defendant bears the burden of proving the existence of federal jurisdiction. Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1356 (11th Cir. 1996).

"The amount in controversy is measured 'on the date on which the court's diversity jurisdiction is first invoked, in this case on the date of removal.'" Creswell v. Transport Risk Solutions Risk Retention Grp., No. 1:19-cv-4632, 2020 WL 13526729, at *2 (N.D. Ga. July 16, 2020) (quoting Burt Co. v. Clarendon Nat'l Ins. Co., 385 F. App'x 892, 894 (11th Cir. 2010)). Here, in removing the case, Defendant acknowledged that Plaintiffs' breach of contract claim was valued at $50,241.45. Defendant therefore included—out of necessity—a fifty-percent bad faith penalty in its calculation of the amount in controversy, because the $50,241.45 in compensatory damages would not satisfy the jurisdictional threshold. (See doc. 1.) However, in its separately filed Motion to Dismiss, which is still pending before the Court, Defendant contends that the bad faith claim in the initial complaint was "procedurally improper," because "Plaintiffs' demand for payment under the policy . . . was not made at a time when immediate payment was due." (Doc. 7-1, pp. 12–13.) That is, Defendant contends Plaintiffs were required by the insurance policy to submit to Defendant a sworn statement of proof of loss within 60 days after the loss and Plaintiffs

failed to do so (and failed to even allege that they did so).  (Id. at p. 13.)  Therefore, Defendant claims, Plaintiffs did not meet "a condition precedent required prior to payment being issued," and their demand was improper.  (Id.)  Plaintiffs have made no attempt to refute Defendant's contention and indeed they have abandoned the bad faith claim entirely by not including it in the Amended Complaint.[2]

Under Georgia law, for a bad faith claim under O.C.G.A. § 33-4-6 to become ripe, a plaintiff must first "send a proper demand for coverage" to the insurer.  Smith v. Allstate Prop. & Cas. Ins. Co., No. 1:23-CV-3152-SEG, 2024 WL 6980607, at *3 n.1 (N.D. Ga. Nov. 26, 2024) (citing Mulhall v. UNITE HERE Loc. 355, 618 F.3d 1279, 1291 (11th Cir. 2010)).  Therefore, a plaintiff's sending an improper demand for coverage means his bad faith claim is not ripe.  See Lavoi Corp., Inc. v. Nat'l Fire Ins. of Hartford, 666 S.E.2d 387, 392 (Ga. Ct. App. 2008) ("[A]t the time the bad faith demand was submitted . . ., immediate payment was not due because [plaintiff] had not complied with the prerequisites under the policy," and, therefore, "the demand for payment was improper.").  Here, the insurance policy required the insured to submit a signed sworn proof of loss within 60 days after the loss, and it further provided that the loss would not become payable until 60 days after receipt of the proof of loss.  (See doc. 1-3, pp. 45, 47.) Accordingly, immediate payment would not have been due in May 2025 (when Plaintiffs' demand

---

[2]  Taking the facts as alleged in the initial complaint (with exhibits) along with the additional facts alleged within the Amended Complaint, it appears that Plaintiffs concede that they submitted the pre-suit demand letter *prior* to submitting a sworn statement of proof of loss.  (See doc. 12, p. 11 (alleging the loss was incurred on September 25, 2024, and a claim was "promptly" submitted to Defendant); doc. 1-4 (Plaintiffs' pre-suit demand letter (the basis for the bad faith claim) which was dated May 6, 2025; doc. 12, p. 12 (alleging that, on June 29, 2025, Defendant acknowledged coverage and prepared an estimate that Plaintiffs found inadequate, so, "[a]s a result of [Defendant's] failure to adequately adjust the Loss," Plaintiffs *then* "submitted a sworn Proof of Loss").  Moreover, it is telling that, after Defendant filed the Motion to Dismiss, Plaintiffs, in filing their Amended Complaint, dropped their bad faith claim entirely.  (See generally id.)

was sent) because, Defendant maintains and the pleadings indicate, no sworn proof of loss had been submitted at that time.  Based on Defendant's contention (and the initial complaint (and exhibits thereto) and Amended Complaint), then, Plaintiffs' bad faith claim against Defendant was not ripe.  See Dickey v. State Farm Fire and Casualty Company, No. 4:25-cv-215, 2026 WL 701886, at *3 (S.D. Ga. Mar. 12, 2026) (reaching same conclusion on nearly identical facts in case involving at least two of the same attorneys for plaintiff and one of the same defense attorneys).

The Court cannot consider an unripe claim in determining the amount in controversy.  See Dargenson v. Progressive Select Ins. Co., No. 23-61391-CIV, 2024 WL 3497603, at *2 n.2 (S.D. Fla. Feb. 23, 2024) (Because "the law is clear that Plaintiff's bad faith claim is not yet ripe, . . . the Court will not consider the bad faith claim in determining the amount in controversy." (internal citation omitted)); Brown v. Safeco Ins. Co. of Ill., No. 6:13-CV-1982, 2014 WL 1478833, at *1 (M.D. Fla. Apr. 14, 2014) ("[A] non-ripe bad faith claim has zero value with regard to the amount in controversy." (citing Jenkins v. Allstate, No. 5:08cv285, 2008 WL 4934030, at *3 (M.D. Fla. Nov. 12, 2008) (holding that insurance bad faith claim cannot be removed until it becomes ripe))); see also Republic Vanguard Ins. Co. v. Russell, No. 2:20cv1317, 2021 WL 794464, at *4 (N.D. Ala. Mar. 2, 2021) ("[T]he duty to indemnify is not yet ripe and the court cannot consider the value of the duty to indemnify claim when calculating the amount in controversy."). Without the potential bad faith penalty, the Court cannot find, by any potentially applicable evidentiary standard,[3] that the amount in controversy met the $75,000 threshold for diversity jurisdiction.

---

[3] Where a plaintiff specifically claims less than the federal jurisdictional prerequisite in state court, a defendant may only establish removal jurisdiction by showing to a "legal certainty" that the plaintiff would not recover less than the federal jurisdictional amount if the plaintiff prevailed.  Tapscott, 77 F.3d at 1356; Burns v. Windsor Ins. Co., 31 F.3d 1092, 1094 (11th Cir. 1994).  On the other hand, where there is an unspecified claim for damages, a removing defendant need not meet the strict "legal certainty" standard articulated.  Instead, a removing defendant need only show "by a preponderance of the evidence that the

In light of all the foregoing, the Court cannot conclude that, at the time of removal, the value of this case has been sufficiently shown to have met the jurisdictional threshold. Accordingly, the Court finds that it lacks subject matter jurisdiction and thus **DIRECTS** the Clerk of Court to **REMAND** this case to the Superior Court of Chatham County, Georgia, for further proceedings.  Following remand, the Clerk of Court is **DIRECTED** to **TERMINATE** all pending motions as moot, (docs. 7 & 8), and to **CLOSE** this case.

**SO ORDERED**, this 27th day of April, 2026.

_____
R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

amount in controversy more likely than not exceeds the [$75,000] jurisdictional requirement." <u>Tapscott</u>, 77 F.3d at 1357; <u>see also</u> 28 U.S.C. § 1332(a).  Here, Plaintiffs, in their initial complaint, did not specifically allege a right to recover a specific amount, but they did allege that the value of the breach of contract claim did not "exceed $74,999," and they also included a copy of the pre-suit demand letter valuing their loss at $50,241.45.  (<u>See</u> docs. 1-3 & 1-4.)  The Court need not determine whether the "legal certainty" standard or the "preponderance of the evidence" standard applies in this context, however, as the Court's conclusion regarding the amount on controversy is the same under both standards. In light of the fact that the bad faith claim was not ripe and thus could not be taken into consideration, the Court finds that Defendant could not show that the value of Plaintiffs' breach of contract claim "more likely than not" exceeds $75,000, much less could Defendant show to a "legal certainty" that Plaintiffs would not recover less than $75,000 if they prevailed.